the appellant in this case. The heart of the issue that's before the court is really the applicability of the First Step Act and whether Section 403 is applicable to Mr. Gomez. The review. Mr. Gomez's case was initially appealed up to the court. The district court had sentenced him to 652 months confinement. Mr. Gomez had two 924 C convictions that were adjudicated at the same time. The first one carrying a 60 month consecutive sentence. The other one, the second one under the 924 C at the time carried a 300 months consecutive, 25 years. Well as you know there's a seemingly a wellspring of cases that have all held contrary to your position in terms of the sentencing having sentence having been quote imposed prior to First Step. So in the wake of that. Get right to the issue? Yes sir. In that regard? I think so. So the question then becomes your honor. It's correct. Recently there have been several circuits that have said, concluded that when a sentence is imposed it's at the time the district court imposes the sentence and that's it. And it doesn't apply to cases that are pending appeal. We take a different position than that. The Sixth Circuit in the United States in New York is still applicable law in regards to when the imposition of a sentence becomes final. When a district court imposes a sentence and the case is later appealed, that sentence that was imposed is not a final sentence. It is subject to review by the appellate court to determine if the sentence is correct or if it needs to be changed. If there's an error in the sentence. The Sixth Circuit in Clark. The difficulty I have with the Sixth Circuit opinion is that I'm not sure of the relationship between finality and the statute itself. So the argument there your honor is the ambiguity. The ambiguity in how Congress phrased the statute when it clarified it by stating that a sentence that has not been imposed. Is Congress referring to a sentence that is final or just a sentence in regards to imposition just by the district court? Congress could have said imposed by the district court. It did not. As the government said, Congress could have said what Congress meant as far as imposed. The sentence being imposed. Would you agree that it was imposed if let's say on a hypothetical case the sentence was appealed and the court affirmed? It would be imposed on the date the district court imposed. Well, the district court had the defendant in court for sentencing. Is that correct? Are you saying that if there's an appeal, it can never be imposed until all of the appellate rights are exhausted? The latter your honor. Once the appellate court affirms the sentence that was imposed by the district court, that sentence becomes finally imposed because it was subject to the appellate review and the defendant took those steps. The appellate took those steps. Interestingly, in this case, and why it's significant in this case, is Mr. Gomez was resentenced on November the 26th of 2018. Approximately 25 days later, the First Step Act Section 403 was enacted on December the 21st of 2018. 25 days and 25 years. That's the consequence. And it's a significant consequence. Yeah, that's what I'm saying. And that is why it's a 25-year swing. It's a 240-month swing. I find the courts very sympathetic to the outcome that you seek. The difficulties with the statute itself, what Congress did with it, did at least step away from this 25-year kicker, which is virtually a life sentence for many of these people. That's correct. It's a 240-month swing over a period of 25 days that potentially the liberty interests of Mr. Gomez is substantially affected. So when you look at Congress's, I think there's evidence of Congress's intent when it was passing this statute that it did not want individuals in Mr. Gomez's situation to be subject to an additional 25 years on a subsequent 924C. If the court looks at this case and sees that taking into account the congressional intent that it's clarifying 924C and that the case is pending appeal at the time in which the First Step Act was enacted, then there should be the applicability of the First Step Act to Mr. Gomez as a remedy when it is clear from the congressional intent of a 25-year sentence. But isn't that a question of retroactivity? It boils down to whether or not it's retroactive, and we don't have anything to support a legal determination or to rest our hat on that it is retroactive. Is that correct? That's correct, Your Honor. Retroactivity is an issue. Congress did not specifically state that it was retroactive. It's not a constitutional issue in regards to the retroactivity of the statute. Perhaps, though not brief, perhaps a due process constitutional issue in that matter as far as the liberty interest is concerned and given the magnitude of the penalty to Mr. Gomez in this case. The argument that we made in our brief is that as Congress defined and entitled this statute as a correct and clarify, by the words that Congress used to clarify that a subsequent conviction for a 924C to be applicable for a 25-year consecutive sentence, there had to be a prior 924C conviction before the subsequent, not at the same time. And it clarified that that is what it meant by the 924C statute. The argument there is that it's the clarification that Mr. Gomez, as his case is pending on direct appeal, should get the benefit of that clarification that Congress specifically set forth, specifically chose the word clarification and specifically amended. Didn't amend, which is it amended to clarify how you get to the 25-year consecutive sentence. And so that clarification is one way that we would argue that the applicability of the statute should be applied to Mr. Gomez. The difficulty that the Congress responded to with the decision of the Supreme Court, Justice Scalia's opinion, that read the statute, the court read the statute, to allow the 25 years, the DA, as we were doing, to get a series of transactions and simply stack them internally so that you didn't have a repeat of the same transaction. And so we had the Supreme Court read the statute, and then the Supreme Court, in the case, in the case of the defender, the offense itself, the result of which was that they were plea bargaining purposes, nothing else, they were stacking those things routinely. And then the Supreme Court upheld it, and then the Congress immediately responded. But if you look at that legislative history, as a general matter, they were trying to overturn, if you will, or to tell the Supreme Court, that's not what we wanted. That's why maybe that's what we said before, but they were going to clarify that this is what we meant. But that doesn't get you to the question of the language of the statute, which seems to give it the impression that it's going forward. It has a trigger date to start. And what do you do with the basic statutory interpretive principle that Congress meant what it said, and perhaps the way they got this legislation through was that people said, well, going forward only. In other words, we're not going to upset what's already done. Right, and likely they looked at the issues that would occur if they opened up Pandora's box to go back and correct all these sentences that occurred. So the response to that, I think, can be couched in the terms of when you—if you apply the principle that the imposition of the sentence, Congress meant when the sentence is final, imposed, when it is final after appellate review, then the only cases that are applicable are cases that are on direct appeal. And so that's probably a very limited amount of cases, and it encompasses a case such as Mr. Gomez that's 25—he missed it by 25 days. What about the person that missed it by one day? It is such a significant amount of time of an interest here that we're talking about, and the ability for the court to say, if you apply the rule of lenity from an ambiguity— What about the people that were already serving the 25 years? Well, Your Honor, that's a problem. There has to be a line that's drawn. And so— That's right. In Congress drawing that line, we're arguing that the line should be drawn after a court affirms a sentence that was imposed because the appellate court can review that sentence—it's not a final sentence—and say it's finally imposed after the appellate court's review. That's the way that I see that we can get there in that regard. The Sixth Circuit has agreed with that idea, basically saying it's finally imposed in the Clark case. But again, to go back to the other circuits that have stated imposition of sentence is when the district court imposes sentence at that time and that time only. Are we going to have circuit splits in this regard? Because it goes to the ambiguity. Don't we already have a split? We do. We may have—hopefully we'll have a larger split. But it goes to the ambiguity of the statute. And in the ambiguity of the statute and the rule of lenity comes back to the appellant in this case, and it's—we're not talking about something inconsequential. And so, respectfully, we'd ask the court to remain the case, back to the district court, in light of the First Act, allowing Mr. Gomez the benefit of the First Act as his case is on direct appeal, and he should receive the benefit of that because his sentence, which was imposed by the district court, is not finally imposed in this case. Thank you, Mr. Ross. Thank you, Your Honor. You've saved your rebuttal time. Thank you. Thank you. Let's hear from the governor, Ms. Hayworth. May it please the court, Gail Hayworth on behalf of the United States. Now, by its plain terms, Section 403 does not apply to Mr. Gomez. Section 403 provides that it applies to pre-Act offenders only if the sentence has not been imposed as of the effective date of the Act, which is December 21, 2018. Gomez's sentence was imposed in June 2017. Therefore, by its plain terms, the Act and its amendments does not apply to him. Let me ask you, what do you do with the doctrine that we apply when we send the remanded case back for re-sentencing in a multi-count indictment? The district court has imposed sentences of three different charges, let's say, and then on appeal, we vacate one of those. They could take down one of those charges, one of those convictions, and then we would manage the district court. What we do at that point is when it goes back down, the district court essentially starts over with sentencing. We don't just say, okay, you've got five years for the count we knocked out, and take off five years. We return it to the district court, and the district court is then allowed to adjust the sentence accordingly. In other words, essentially, the sentencing package, we see that the district court treats a sentence entitled to have before him the full range of choices that are there. When we take away one of them, we give them a chance to re-sentence on those other counts themselves. Is that re-sentencing on those other counts an imposition of sentence? I'm not sure. If the court is re-sentencing on the 924C counts, then that would seem to be a re-sentencing on those counts. The government's position is that the statute's terms do not apply to a re-sentencing. It only applies to the original sentence. Even more importantly, here in Gomez's case, the re-sentencing date is even more irrelevant for determining Section 403's applicability because his initial sentence was never vacated. It was a limited remand where this court sent the case back for the district court to consider whether it wanted to modify its sentence. You're correct in that regard. But I was trying to put together the coherent whole, our sentencing doctrine on remands of sentences, and to fit it with this statute. And I have some difficulty doing that. But I reckon you're correct, I think, in this particular sentence itself. In this sentence, the 924C sentences were not even modified, so we just have one imposition. The remand particularized exactly what was to be done. So it's not really 25 days. It's imposed in June 2017, and then it's never modified again. But setting that aside, for that case where there is re-sentencing, the government's position would be that by the terms of this statute, because it says a sentence has not been imposed as of the effective date, and a sentence would include an original sentence even if it's vacated, then it would not apply to the re-sentencing. But obviously the court doesn't need to address that here, because for many reasons the re-sentencing happened before the effective date, in addition to there was not really a re-sentencing on the 924C counts. So beyond the plain text of Section 403, which shows that it does not apply to Gomez, we also have the case law. And in Purvis, this court recently held that Section 403 did not apply to a defendant who was sentenced before the effective date of the act, even though his appeal remained pending. And under that case, the defendant's argument that 403 should apply to him is effectively foreclosed. Moreover, Purvis is in good company. Other circuits have held that Section 403's applicability turns on the date of the defendant's sentencing. In Hunt, Melvin, and Gordon, the 10th, 4th, and 6th circuits held that a defendant who is sentenced before the effective date of the First Step Act is not entitled to the benefits of that act. And in Garcia, the 11th circuit, just like this court in Purvis, held that the prior version of 924C applies to a defendant who is sentenced before the effective date of the act, even though his appeal remained pending thereafter. Moreover, several circuits have held in interpreting Section 401C of the First Step Act, which is identical to the provision at issue here, that the term sentence imposed or imposed means when the district court sentenced the defendant, not when the appeals have been exhausted and the sentence becomes final. Now, to support his argument, Gomez points to the word clarification in the title of Section 403, and he relies on authority regarding amendments to the sentencing guidelines. But there are several problems with this argument. First of all, a word in the title of a statute cannot override the statute's plain meaning. And here, Section 403 specifically provides that it only applies to pre-act offenders if a sentence has not been imposed as of the effective date. More importantly, the authority on which he relies is in an opposite. This is not dealing with an amendment to a sentencing guideline. This is an amendment to a statute. And the default rule when there is an amendment to a statute comes from the general savings statute, and that provides that new penalties provided by a new statute do not apply to pre-act offenders unless Congress specifically and clearly provides otherwise. Here, Section 403 of the act shows that Congress provided that those new penalties only apply to pre-act offenders if a sentence had not been imposed as of the effective date of the act. Moreover, even under the authority that he cites, Section 403 would not apply to him because it affects a substantive change. So even if you look to the authority regarding guideline amendments, because it affects a substantive change, it cannot apply to him on plain error review. And it affects a substantive change because it materially changes the language of Section 924C. It strikes out language regarding what previously triggered that 25-year mandatory minimum, which was established by the Supreme Court in Diehl, and it replaces it with language establishing a new trigger. Now, he argues that it's not a substantive change based solely on that word clarification, but Congress in 2018 cannot dictate what a prior Congress meant when it enacted many decades earlier 924C. Moreover, what the prior version of 924C meant is what the Supreme Court said it meant in Diehl. And further, he ignores that Congress in 1998 implicitly approved of Diehl's interpretation of that statute when it amended Section 924C by increasing the penalties for a second or subsequent 924C conviction, but it notably left Diehl's interpretation of what constituted a second or subsequent conviction undisturbed. Now, Gomez also argues that a sentence is not imposed until it is finally imposed, but as discussed, many circuits have rejected that argument. More importantly, that's not what Section 403 says. The statute does not say that it applies to pre-act offenders if a sentence has not become final as of December 21, 2018. It says if a sentence has not been imposed. And as the Third Circuit held in Avilis, imposition of sentence and finality are two different things. Moreover, Congress clearly knew there's no ambiguity here, contrary to what he says, because Congress clearly knew how to require finality when it wanted to, as it specifically did so in the First Step Act and other sections of it. Indeed, in Section 403A, the part of the act providing the amendment that Gomez seeks the benefit of, Congress specifically required as a new trigger for that 25-year mandatory minimum a final 924C conviction. Moreover, in Section 401, in providing for enhanced penalties for certain drug trafficking crimes, Congress specifically required that certain prior convictions have become final. Notably, Congress did not include that finality language in determining when Section 403 is applicable. All it requires is imposition. And I also wanted to address that there is no circuit split here, because he relies on Clark to hold that imposition of sentence means final imposition after appeals have been exhausted. But every circuit court to address Clark has rejected that interpretation, and even the Sixth Circuit itself has not followed Clark in the context of the First Step Act. In Wiseman, the Sixth Circuit held that the First Step Act did not apply to a defendant who was sentenced before the effective date of the act, even though his appeal remained pending. So even the Sixth Circuit has not followed Clark in the context of the First Step Act. And every other circuit to interpret what imposed means in the context of 403 or Section 401, which is identical to 403 in relevant respects, has held that that means when the district court sentences the defendant, not when the appeal is exhausted. Because Gomez did not address the second issue, we will rely, unless the court has questions. Well, he had a couple minutes left, and I may have given him a wrong sign to sit down early. But I'm going to ask him to address it when he comes back up, because he did brief it. So while you're there, you might as well go ahead and address it, so that way we're clear on it. Yes, Your Honor. So he fails to show plain error in the district court's oral pronouncement of the special conditions of supervised release. First, the standard review is plain error, because he could have easily objected when, at the resentencing hearing, the district court said it was imposing supervised release subject to the same terms and conditions as previously stated. Now, in the court's original judgment, which was entered into the record in June 2017, more than a year before the resentencing hearing, that judgment included four special conditions. So when the district court said that it was imposing supervised release subject to the same terms and conditions as previously stated, Gomez could have easily objected had he disagreed with those four special conditions included in the court's prior judgment, or if he had any confusion whatsoever about what the district court meant when it said it was imposing the same terms and conditions as previously stated. Because he could have objected and did not, therefore plain error review applies. And under that standard, he fails to meet the first and second prongs. First, he fails to show that there was any error, let alone plain error, in the court's oral pronouncement, because there is no conflict between the court's oral pronouncement in saying that it was imposing the same terms and conditions as previously stated, and the court's written- What's the age of this defendant? I believe he's in his 30s. Let me look it up. He was 37 at the time that he committed the offense. Okay, so he's in his 40s, and he's got a 25-year sentence, and we're going to worry about the conditions of his release. Go ahead. Congress decides the penalty. Congress draws. Yes, there's inherent line drawing when penalties are reduced, and it's Congress's job to draw that line. We just enforce that line. Well, your argument is sound, although there's some parts of sentencing we've kind of had sacrosanct, like allocution and some other things that, yes, somebody can object, but we've been fairly consistent in terms of congruity between oral statements and what's in the written judgment because it's a criminal matter. So ordinarily, yeah, we say you didn't waive it, blah, blah, blah, but allocution and disparity between written and oral are kind of those doctrines, as you know. We kind of hit the pause button a little bit because we say the district court should do what the district court should do, and I understand you say it's no error, but as much your argument as even if it is, you're saying there was no substantial difference. I guess that's your main argument, right? Right, that there's no conflict between the oral pronouncement and the written judgment, no conflict between the court orally saying at the resentencing, I'm imposing the same terms and conditions as previously stated, and it's written judgment imposing the same terms and conditions previously stated in its prior judgment. Additionally, Gomez can't satisfy the third prong of plain error because he fails to show how the outcome would have been different had the district court specifically articulated each of those four conditions into the record. Even if the court had so articulated each of those four conditions, it's questionable whether Gomez could have even disputed them as they were outside of the mandate, and he had waived the issue in the first appeal, but even if that issue and the reconsideration of those special conditions had not been precluded by the mandate, he fails to show how the articulation of those special conditions would have changed the court's mind as to the propriety and appropriateness of them in this case. The record, moreover, indicates that the district court would not have done so regarding the condition requiring the drug treatment. Beyond the fact that Gomez was under a state court order to engage in drug treatment at the time he committed the incident offense, he himself requested drug treatment, at least during his incarceration, to help him maintain his sobriety. Moreover, regarding the condition requiring treatment for domestic violence, Gomez's unrebutted criminal history showed several convictions for assault and domestic violence, including one involving his current common-law wife. Regarding the condition requiring the payment of court-ordered child support payments, Gomez himself admitted that he was ordered to pay child support payments and that he was in arrears, and a credit report confirmed those facts. And finally, regarding the condition requiring the defendant to provide requested financial information to the probation officer, that condition was clearly a means to effectuate the condition requiring him to pay his child support payments. Now, so Gomez makes no effort to show that had the court articulated those special conditions into the record, it would not have imposed them, and the record gives no indication that that would have been the case. As such, he fails to show that the alleged error affected his substantial rights, and his argument fails on the third prong as well as the first and second. So if the court has no further questions, we ask it to affirm. Thank you. All right, back to you, Mr. Ross. Your Honor, briefly in regards to the special conditions the supervisor released, as the court's aware there was an en banc hearing in the United States v. Diggles, I think that case will resolve this case in regards to the special conditions. So I think we leave it to see how the court rules en banc in Diggles. In regards to many of the points that the government raised as far as why Mr. Gomez should not benefit from the First Step Act, first, in regards to Mr. Gomez's resentencing, was it truly a resentencing, or do you go back to the June 2017 imposition of sentence by the district court? I think when you look at sentencing, especially resentencings on remand, a resentencing is when a court does that, it does it as a complete package. That's what it did in this particular case. It looked at all counts in formulating a sentence and doing a downward variance, and it took all counts into consideration when formulating that sentence. So truly it is a resentencing that the district court made, even though the remand was stated in terms of whether or not the court wanted to modify the sentence. The remand serves the packaging policies that we have, the rules that we have, at least to the extent that it's here. I sent back to Judge Godbee and allowed him to go back in the light of this 25-year sentence that's being upheld to reconsider the sentences imposed in the other counts, and he did so. He reduced the sentences in those so that the judge is looking at the ultimate amount of time to be served. So in that sense, our packaging rule seems to me, at least in part, served here. It was served, and he received a lesser sentence. In resentencing, there was a change in the sentence. I would argue that the imposition of a new sentence of 480 months occurred on November the 26th of 2018. It's still short of when the date of the enactment. Curiously, the court had ordered the district court to render its decision within 60 days. They held the case in a 60-day advance. It would have been November the 28th. I guess in foresight, the hypothetical question becomes what if the sentence was continued until after December 21st when this was enacted? Would the court of appeals have allowed that? Would the district court have accepted that? And then where would we be? The court can see the problems in this case. And the injustice that occurs to Mr. Gomez and others. It's not opening Pandora's box to allow the district court to go back and to revisit Mr. Gomez's sentence in light of the First Step Act. The finality issue as far as when a sentence is imposed, though not adopted by many circuits, it's still out there and available to be done. It doesn't open Pandora's box. It does create a bright line to address Congress's likely issue in regards of making it retroactive. And it serves the purpose of Congress's intent for an individual in Mr. Gomez's situation to not face a 25-year sentence. This is a swing of 240 months to this individual. And given that, I would argue that there is ambiguity. We wouldn't be having litigation if there wasn't ambiguity in the case. And what imposed means. And I know that there will be more cases that are coming down in other circuits as this is kind of an issue of first impression. In one sense, does the First Step Act apply to cases pending appeal? So in that regard, we would ask the court respectfully to remand the case back to Judge Godbee in light of the First Step Act and allow him to sentence Mr. Gomez in the way Congress would have envisioned it in this regard for criminal defendants. All right, thank you, Mr. Ross. We note that you are court appointed and have served the court ably, not only in this case, but lots of cases. And our court heavily depends on and appreciates the work of you and all the court appointed attorneys that take on these cases. To brief them, to come and argue, to zealously and ethically represent them. And I want you to know personally and pass on to others that we do appreciate your service. Thank you, Your Honor. All right, thank you. All right.